**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000331
24-AUG-2012
10:25 AM**

NO. CAAP-11-0000331

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


LANAIANS FOR SENSIBLE GROWTH,
Appellant-Appellant,
v.
LAND USE COMMISSION; RANSOM A.K. PILTZ,
in his official capacity as Chairperson of the
State of Hawai'i Land Use Commission;
VLADIMIR P. DEVENS, REUBEN S.F. WONG,
KYLE CHOCK, THOMAS CONTRADES, LISA M. JUDGE,
DUANE KANUHA, NORMAND R. LEZY, and NICHOLAS W. TEVES, JR.,
in their official capacities as members of the
Land Use Commission; CASTLE AND COOKE RESORTS, INC.;
COUNTY OF MAUI PLANNING DEPARTMENT;
and STATE OFFICE OF PLANNING,
Appellees-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-0415)


MEMORANDUM OPINION
(By:  Foley, Presiding J., Fujise and Leonard, JJ.)

In this secondary appeal, Appellant Lanaians for
Sensible Growth (LSG) appeals from the Final Judgment entered
March 9, 2011 in the Circuit Court of the First Circuit[1] (circuit
court).  Judgment was entered in favor of the Land Use Commission
(LUC); Ransom A.K. Piltz, in his official capacity as chairperson
of LUC; Vladimir P. Devens, Reuben S.F. Wong, Kyle Chock, Thomas

_____

[1]  The Honorable Karl K. Sakamoto presided.

Contrades, Lisa M. Judge, Duane Kanuha, Normand R. Lezy, and Nicholas W. Teves, Jr., in their official capacities as members of LUC; Castle and Cooke Resorts, Inc. (CCR); County of Maui Planning Department (Maui County); and the State of Hawai'i Office of Planning (SOP) and against LSG.

The issue before this court is whether the circuit court erred when it dismissed LSG's appeal from the January 25, 2010 LUC "Order Vacating 1996 Cease and Desist Order; Denying Office of Planning's Revised Motion to Amend Findings of Fact, Conclusions of Law, and Decision and Order Filed April 16, 1991; and Granting Petitioner's Motion for Modification of Condition 10, with Modifications" (2010 Order) for lack of jurisdiction.

## I. BACKGROUND

On November 29, 1989, Lanai Resort Partners (LRP), the predecessor-in-interest to Lanai Company, Inc. (LCI) and CCR,[2] petitioned LUC to amend the land use district boundary at Manele, on the island of Lana'i, from rural and agricultural districts to an urban district. CCR planned to develop an eighteen-hole golf course on the property in question. CCR proposed to irrigate the golf course "with non-potable water from sources other than potable water from the high level aquifer." LUC approved CCR's reclassification request, subject to a number of conditions, including Condition No. 10, the focus of this appeal. Condition No. 10 restricted the use of potable water from Lana'i's high level aquifer by stating:

> 10. [CCR] shall not utilize the potable water from the high-level groundwater aquifer for golf course irrigation use, and shall instead develop and utilize only alternative non-potable sources of water (e.g., brackish water, reclaimed sewage effluent) for golf course irrigation requirements.

_____

[2] Lanai Company, Inc. (LCI) was the initial successor-in-interest to Lanai Resort Partners (LRP). On December 31, 2000, LCI and CCR merged, leaving CCR as the surviving entity. For the sake of simplicity, LRP, LCI, and CCR will be referred to as CCR, the current operator of Lana'i's Manele golf course. Lanai Co., Inc. v. Land Use Comm'n, 105 Hawai'i 296, 298 n.2, 97 P.3d 372, 374 n.2 (2004).

> In addition, [CCR] shall comply with the requirements imposed upon [CCR] by the State Commission on Water Resource Management as outlined in the State Commission on Water Resource Management's Resubmittal -- Petition for Designating the Island of Lanai as a Water Management Area, dated March 29, 1990.

CCR also proposed "to provide alternate sources of water for golf course irrigation by developing the brackish water supply." In the event CCR did not follow through on its commitment to comply with the various conditions, Condition 20 provided that such failure "may result in reclassification of the property to its former land use classification."

On October 13, 1993, LUC issued an Order to Show Cause, requiring CCR "to show cause why [the property in question] should not revert to its former land use classification" because LUC had reason to believe CCR was in violation of Condition No. 10 of the 1991 Order.

At issue was the meaning of the term "potable water." LUC noted that during the original proceedings to obtain the reclassification of land, CCR had used the term "high level aquifer" interchangeably with the term "potable." During the Order to Show Cause hearings, CCR defined "potable" as defined in the Maui County Code -- "water containing less than 250 milligram per liter of chlorides." LUC found that "[t]he potability of any water source does not depend on any particular level of chloride concentration." LUC also found that CCR was taking steps "to ensure that only brackish water from the high level aquifer [was] being utilized" for irrigation water.

On May 17, 1996, after holding a number of hearings, LUC issued its "Findings of Fact, Conclusions of Law, and Decision and Order" (1996 Order) on the Order to Show Cause. LUC concluded that Condition No. 10 prohibited the use of any water -- brackish or not, potable or not -- from the high-level aquifer for irrigation of the golf course and ordered CCR to "immediately cease and desist any use of water from the high level aquifer for golf course irrigation requirements."

3

CCR appealed LUC's 1996 Order to the Circuit Court of the Second Circuit[3] (second circuit court). LCI, 105 Hawai'i at 298, 97 P.3d at 374. On April 26, 1997, the second circuit court reversed the 1996 Order on the basis that LUC exceeded its authority in issuing a cease and desist order. Id. The second circuit court declined to disturb LUC's finding that CCR violated Condition No. 10 of the 1991 Order. Id. On appeal, the Hawai'i Supreme Court dismissed the appeal as premature because the second circuit court had not entered an appealable final judgment. Id. at 306, 97 P.3d at 382.

On April 26, 1999, the second circuit court amended its earlier ruling, citing additional bases for reversing LUC's 1996 Order, finding, *inter alia*, that "[t]he LUC's conclusion that [CCR] violated Condition No. 10 was arbitrary, capricious, and clearly erroneous." LCI, 105 Hawai'i at 306, 97 P.3d at 382. Judgment was entered in favor of CCR, Maui County, and SOP and against LUC. Id.

LSG and LUC appealed to the Hawai'i Supreme Court. Id. On September 17, 2004, the supreme court affirmed the second circuit court's ruling that LUC had failed to specify a clear factual basis for its 1996 Order. The supreme court stated:

> Although Condition No. 10 seemingly mandates that "only alternative non-potable sources of water" shall be used, it does not on its face exclude as a source "non-potable" water that may exist in the high level aquifer. Condition 10 only precluded [CCR] from "utiliz[ing] the potable water" from the high level aquifer; it did not also prohibit the use of "non-potable water. "Accordingly, it is not apparent that Condition 10 was meant to exclude the use of "non-potable" water.

LCI, 105 Hawai'i at 310, 97 P.3d at 386. Thus, "[t]he plain language of Condition No. 10 does not prohibit [CCR] from using *all* water from the high level aquifer." Id. The supreme court further stated that even if LUC's intent had been to preclude CCR

---

[3] The Honorable Shackley F. Raffetto presided.

from using <u>all</u> water, not just potable water, from the high level aquifer, "[t]he plain language of Condition No. 10 did not give fair notice, or adequately express" that intent. <u>Id.</u> at 314, 97 P.3d at 390.

The supreme court remanded the case "to the [second circuit] court with instructions that the court remand this case to LUC for clarification of its findings, or for further hearings if necessary, as to whether [CCR] used potable water from the high level aquifer, in violation of Condition No. 10." <u>LCI</u>, 105 Hawai'i at 319, 97 P.3d at 395 (2004). <u>See</u> <u>In re Water Use Permit Applications (Waiahole)</u>, 94 Hawai'i 97, 158, 9 P.3d 409, 470 (2000) (remanding a matter to the agency for "proper resolution" where the agency had "not provided any findings or conclusions that would enable meaningful review of its decision").

In response to the supreme court's remand and directive for LUC to clarify its findings or conduct further hearings, if necessary, LUC held evidentiary hearings on June 7-8, 2006, to incorporate more recent data and the current Maui County policies. <u>LCI</u>, 105 Hawai'i at 319, 97 P.3d at 395. LUC admitted evidence; heard testimony from the public, the parties, and expert witnesses; and cross-examined some of the witnesses. Subsequent to the hearings, the parties entered into settlement discussions, which eventually broke down.

In 2007, CCR and SOP filed separate motions seeking to amend LUC's 1991 Order by modifying Condition No. 10. CCR also sought to dissolve LUC's 1996 Order to the extent CCR had been ordered to "immediately cease and desist any use of water from the high level aquifer for golf course irrigation requirements."

On January 8, 2010, LUC met to consider "[CCR's] Motion for Modification of Condition No. 10 and Dissolution of 1996 Cease and Desist Order" (CCR's Motion) and "[SOP's] Revised Motion to Amend Findings of Fact, Conclusions of Law, and Decision and Order Filed April 16, 1991" (SOP's Motion). After taking testimony, LUC voted to vacate the 1996 Order, deny SOP's

Motion, and grant CCR's Motion with modifications. On January 25, 2010, LUC entered the 2010 Order.

On February 24, 2010, LSG filed its notice of appeal from the 2010 Order to the circuit court.

The circuit court heard the appeal on November 23, 2010, and issued its Final Judgment on March 9, 2011. The circuit court concluded it did not have jurisdiction to hear the appeal, based on the premise that when the case was remanded to LUC, the circuit courts were divested of further jurisdiction over the matter. LSG timely appealed the Final Judgment to this court.

## II. STANDARDS OF REVIEW

Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which [the appellate] court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (1993) to the agency's decision.

HRS § 91-14, entitled "Judicial review of contested cases," provides in relevant part:

> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1) In violation of constitutional or statutory provisions; or
> >
> > (2) In excess of the statutory authority or jurisdiction of the agency; or
> >
> > (3) Made upon unlawful procedure; or
> >
> > (4) Affected by other error of law; or
> >
> > (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> >
> > (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact

6

under subsection (5); and an agency's exercise of discretion under subsection (6).

United Pub. Workers, AFSCME, Local 646, AFL-CIO, v. Hanneman, 106 Hawai'i 359, 363, 105 P.3d 236, 240 (2005) (brackets in original omitted) (quoting Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 416, 91 P.3d 494, 498 (2004)). "Pursuant to HRS § 91-14(g), an agency's conclusions of law are reviewed de novo." United Pub. Workers, 106 Hawai'i at 363, 105 P.3d at 240 (internal quotation marks and citation omitted). "A circuit court's conclusions of law are subject to de novo review." Paul's Elec. Serv., 104 Hawai'i at 420, 91 P.3d at 502.

### III.  DISCUSSION

The circuit court has jurisdiction over this appeal pursuant to HRS § 91-14 (1993 & Supp. 2011), which provides in pertinent part:

> (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review under this chapter[.]

HRS § 91-14(a).

Furthermore, the circuit court's review of LUC's 2010 Order is governed by HRS § 91-14(g), which provides that the court may reverse or modify an agency decision if the petitioners' substantial rights may have been prejudiced because the agency's findings, conclusions, decisions, or orders are:

> (1)   In violation of constitutional or statutory provisions; or
>
> (2)   In excess of the statutory authority or jurisdiction of the agency; or
>
> (3)   Made upon unlawful procedure; or
>
> (4)   Affected by other error of law; or
>
> (5)   Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6)   Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

HRS § 91-14(g).

On appeal to the circuit court, LSG contended LUC failed to follow the mandate set forth by the Hawai'i Supreme Court in that:

> 81. The LUC erred by ignoring the very specific instruction from the Hawai'i Supreme Court to render a determination on whether [CCR] was using potable water from the high level aquifer.
>
> 82. The LUC made no finding whether CCR was in fact using potable water from the high level aquifer in violation of Condition No. 10, as the Hawai'i Supreme Court specified.

LSG asked the circuit court to "[r]everse and vacate the [2010] Order and declare that it is null and void because it is arbitrary, capricious, characterized by abuse of discretion or clearly unwarranted exercise of discretion, clearly erroneous, made after following unlawful procedure and other error of law[.]" In other words, LSG argued that LUC's 2010 Order prejudiced LSG's substantial rights, in violation of HRS 91-14(g).

The circuit court mistakenly believed it was divested of jurisdiction due to the instructions contained in the Hawai'i Supreme Court's remand in LCI, 105 Hawai'i 296, 97 P.3d 372. The supreme court directed the circuit court to "remand this case to the LUC for clarification of its findings, or for further hearings if necessary[.]" Id. at 319, 97 P.3d at 395. At that point in the proceedings, the circuit court was limited to take no action other than to remand the case to LUC. "When a reviewing court remands a matter with specific instructions, the trial court is powerless to undertake any proceedings beyond those specified therein." Standard Mgmt., Inc. v. Kekona, 99 Hawai'i 125, 137, 53 P.3d 264, 276 (App. 2001) (quoting Foster v. Civil Serv. Comm'n, 627 N.E.2d 285, 290 (Ill. App. 1993) (internal quotation marks omitted).

Pursuant to HRS § 91-14, the circuit court had jurisdiction to hear LSG's appeal.

8

## IV. CONCLUSION

The Final Judgment entered March 9, 2011 in the Circuit Court of the First Circuit is vacated and remanded to the circuit court.

DATED: Honolulu, Hawai'i, August 24, 2012.

On the briefs:

Alan T. Murakami
(Native Hawaiian Legal
Corporation) for
Appellant-Appellant Lanaians for
Sensible Growth.

Bryan C. Yee
Deborah Day Emerson
Deputy Attorneys General for
Appellee-Appellee State Office of
Planning.

Jane E. Lovell
Deputy Corporation Counsel
County of Maui for
Appellee-Appellee County of Maui
Planning Department.

Diane Erickson
Deputy Attorney General
for Appellees-Appellees
Land Use Commission, Ransom A.K.
Piltz, Vladimir P. Devens, Reuben
S.F. Wong, Kyle Chock, Thomas
Contrades, Lisa M. Judge, Duane
Kanuha, Normand R. Lezy, and
Nicholas W. Teves, Jr., in their
official capacities as members of
the Land Use Commission.

Bruce L. Lamon
Brett R. Tobin
(Goodsill Anderson Quinn &
Stifel) for Appellee-Appellee
Castle & Cooke Resorts, LLC.

Presiding Judge

Associate Judge

Associate Judge